UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN ROBB,

    Plaintiffs,

-against-

GEORGE ROBB JR., GLEN FEINBERG, COFFEY MODICA, LLP f/k/a COFFEY MODICA O'MEARA CAPOWSKY, LLP, and FULLERTON BECK, LLP,

    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/23/2024

Case No.: 1:24-cv-4262-CM

**DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR REMAND; GRANTING DEFENDANTS GLEN FEINBERG, COFFEY MODICA, LLP, AND FULLERTON BECK, LLP'S MOTION TO DISMISS; STAYING PROCEEDINGS AS AGAINST DEFENDANT GEORGE ROBB JR.; AND PLACING THE MOTION AT DOCKET #25 ON THE SUSPENSE CALENDAR PENDING BANKRUPTCY**

McMahon, J.:

Kathryn Robb ("Plaintiff") is a citizen of Connecticut. Dkt. No. 53. She commenced this lawsuit in the New York State Supreme Court in and for New York County against her brother George Robb. Jr., a citizen of Florida; Glen Feinberg, a New York attorney who represented George in a previous lawsuit brought by Kathryn; and two law firms with which Feinberg was associated during the course of that prior lawsuit. *See* Dkt. No. 1-1.

This lawsuit alleges that, in the action brought by Kathryn in the New York State Supreme Court in and for New York County under the Child Victims Act ("CVA"), CPLR § 214-g, George and Feinberg fraudulently induced Kathryn — who has long insisted that her brother abused her when they were minors —to enter into a settlement on the eve of a damages trial. *See* Dkt. No. 1-1. Under the terms of the settlement, which the parties reduced to a written

1

agreement (the "CVA Settlement Agreement"), George agreed to pay Kathryn the sum of $3.75 million, in three tranches, with the first payment due by September 30, 2023. Dkt. No. 25-2, Summons & Compl. Ex. 2, ¶ 1. As was her right, Kathryn had the CVA Settlement Agreement reduced to a judgment (the "CVA Judgment"), which was docketed in New York County on July 10, 2023. New York State Supreme Court, New York County, Index No. 950000/2019, NYSCEF Doc. No. 272. Per one provision of the CVA Settlement Agreement, Kathryn agreed to forbear from enforcing her judgment as long as George remained in compliance with the CVA Settlement Agreement's payment schedule. *See* Dkt. No. 25-2, Summons & Compl. Ex. 2, ¶ 1.H.

Needless to say, George did not make the September 30, 2023 payment required by the CVA Settlement Agreement and the CVA Judgment. Dkt. No. 1-1, ¶¶ 36, 175. Kathryn — freed from her obligation to forbear enforcement — sued George in the New York State Supreme Court, alleging that George breached the CVA Settlement Agreement in two ways: (1) by not making the first payment and (2) by concealing certain assets he was required to disclose prior to to the damages trial. *Id.* ¶¶ 36, 113, 175.

Kathryn also brought multiple causes of action -- fraud, fraud by omission, fraudulent concealment, fraudulent inducement, negligent infliction of emotional distress, intentional infliction of emotional distress, and unjust enrichment – against George, all of which are predicated on the notion that George fraudulently induced her to settle the CVA case rather than go to trial — a settlement with which George had no intention of complying. *See id.* On these claims, Kathryn also sued Glen Feinberg, George's lawyer, who participated in the negotiations that led to the settlement. *Id.* For good measure, she sued two law firms: (1) Coffey Modica, LLP ("CM"), of which Feinberg was a member at the time the settlement was negotiated and signed, and (2) Fullerton Beck, LLP ("FB") to which Feinberg belonged when the case commenced in

2019 — and with which he ceased to be associated in 2022, many months before the settlement of the CVA Action. *Id.* I will refer to these defendants collectively as the "Lawyer Defendants."

George removed the case to this Court pursuant to 28 U.S.C. §1441(a), alleging complete diversity, Dkt. No. 1. And there is indeed complete diversity as between him and his sister. Dkt. No. 1-1, 53. However, Feinberg is a citizen of New York, and each of the two law firms has one equity partner who is a citizen of New York. Dkt. No. 1-1, 51, 52. This presumptively rendered removal of the case improper under the rule that defendants who reside in the forum state cannot remove a case filed against them to federal court. *See* 28 U.S.C. § 1441(b)(2) (emphasis added):

> A civil action otherwise removable solely on the basis of [diversity] jurisdiction under section 1332(a) of this title, may not be removed if *any* of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

Moreover, while the summons filed in the New York State Supreme Court indicated that Kathryn is a resident of Lexington, Massachusetts, Dkt. No. 1-1, p.1, a subsequently-filed declaration by Kathryn's attorney clarified that Kathryn is actually a resident of Connecticut. Dkt. No. 53. Therefore, removal is also improper because there is not complete diversity as between her and the two law firms, each of which has a partner who is a citizen of Connecticut. Dkt No. 51, 52. *See Carden v. Arkoma Assoc.*, 494 U.S. 185, 195–96 (1990) (the state of citizenship of a limited liability corporation or partnership for diversity purposes is the citizenship of each members of said entity – not, as the parties appear to have believed, the state of incorporation or of the entity's principal place of business).

Despite these impediments, the Lawyer Defendants all filed consents to removal, Dkt. No. 5, 9, 19. However, they do not actually "consent" to suit in federal court. Instead, the Lawyer Defendants argue that they were "fraudulently joined" as defendants in an action in which her claims only lie against George, and so are not "properly joined as defendants" in this case,

3

rendering the rules that bar removal inapplicable. *See* Dkt. No. 27, pp. 2–4; Dkt. No. 29-4, pp. 6–7; Dkt. No. 31, p. 8. The Lawyer Defendants argue that Kathryn "fraudulently joined" the Lawyer Defendants for the sole purpose of defeating removal. *See* Dkt. No. 27, 29-4, 31. The fraudulent joinder rule ensures that a plaintiff cannot deprive a diverse defendant of the right to a federal forum by suing non-diverse parties who destroy the ability of a diverse defendant to remove the case, but who have no real stake in the litigation. *Bounds v. Pines Belt Mental Health Care Resources*, 593 F.3d 209, 215 (2d Cir. 2010). The Lawyer Defendants allege that they have no real stake in the lawsuit because Kathryn's Complaint, fairly read, fails to state a claim against any of them. They ask the court to dismiss the claims asserted against them, which would allow George's removal of the case to stand. George, of course, prefers to litigate in federal court, so he opposes remand and supports the Lawyer Defendants' efforts to determine whether Kathryn fraudulently joined them as adverse parties. *See* Dkt. No. 26.

It is well settled that a federal court confronted with the possibility of fraudulent joinder on a motion to remand can look behind the allegations of a complaint and ascertain whether the complaint states a viable claim against the defendants who assert that joinder was fraudulent. *See Pampillonia v. RJR Nabisco*, 138 F.3d 459, 461 (2d Cir. 1998). In order to defeat a motion to remand on the basis of fraudulent joinder, a defendant must show that there is "no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court."

Kathryn asserts no viable causes of action against any of the Lawyer Defendants. Most of her claims against them consist of an impermissible attack of the validity of the New York State Supreme Court's judgment against her brother George in the underlying CVA Action. She mounts these attacks under a variety of guises, but whether she alleges this or that type of fraud,

4

or unjust enrichment, her claims all in essence allege that George and the Lawyer Defendants fraudulently convinced Kathryn to agree to a settlement that George never intended to honor. The law is clear that there is one, and only one, way for Kathryn to assert that claim, however she chooses to style it: she needs to bring a motion in the court in which the judgment was entered – in this case, the New York State Supreme Court – pursuant to NY CPLR 5015, to set the judgment aside. Only the court that entered the judgment can vacate it, since New York law prohibits collateral attacks on prior judgments. *Urias v. Daniel P. Buttafuoco & Assocs., PLLC*, 41 N.Y.3d 560, 567 (2024) (citing *Crouse v. McVickar*, 207 N.Y. 213, 219 (1912)).

The remaining few causes of action asserted against the Lawyer Defendants -- for tortious interference with contract and intentional infliction of emotional distress -- also fail to state a claim for relief and can be dismissed on a motion under Fed. R. Civ. P. 12(b)(6).

Since the allegations of Kathryn's Complaint fail to state a viable claim against the Lawyer Defendants, the Lawyer Defendants were indeed fraudulently joined, and the claims against them are DISMISSED. As a result, their citizenship can be disregarded when deciding Kathryn's Motion to Remand.

The only real parties of interest in this case are Kathryn and George, between whom there is complete diversity. The Motion to Remand is, therefore, DENIED, as is Kathryn's request for attorneys' fees – a request made even less meritorious by the utter lack of merit to her claims against the fraudulently joined Lawyer Defendants.

George also moved to dismiss the complaint as against him (Dkt # 25). On October 22, the court completed a decision GRANTING that motion in part and DENYING it in part – specifically, denying George's motion to dismiss the Ninth Cause of Action (for breach of contract) that Kathryn asserted against him. The Ninth Cause of Action, unlike many of

Kathryn's other claims, did not constitute an attack on the underlying state court judgment – indeed, it depended for its force on the validity of the Settlement Agreement that was incorporated into the judgment, since one cannot breach an invalid contract. Kathryn clearly alleged that George had breached the Settlement Agreement, both by not making the September 2023 payment and by concealing assets from her in violation of the terms of the Agreement. Moreover, because the Settlement Agreement specifically provided that, "If George Robb Jr. breaches the Agreement, Kathryn Robb shall bring an action to enforce her rights hereunder, and Kathryn Robb shall be entitled to recover from George Robb, Jr., her costs and expenses, including cost, interest and attorney's fees...." *Id.* ¶ 1.M, her right to sue in breach of contract – a right that every party to a contract has in the event of breach -- is not barred by the terms of the agreement that also allow her to pursue other remedies (enforcement of the CVA Judgment, which she had foreborne to do; attachment of assets) for which that agreement also provides.

However, while that decision was awaiting docketing, the court's eyes fell on a letter in my in box, notifying me that George had filed a voluntary petition in bankruptcy in the United States Bankruptcy Court for the Southern District of Florida. (Dkt. # 54). Therefore, before my decision could be docketed, all proceedings against George were stayed pursuant to 11 U.S.C. § 362. In light of the automatic stay, I recalled the original decision and excised those portions that dispose of George's motion on the merits. However, there is no reason not to issue so much of the decision as disposes of Kathryn's claims against the Lawyer Defendants, none of whom is in bankruptcy and all of whom deserve to be let out of chancery.

Because of the automatic stay, the Clerk of Court is directed to stay all further proceedings and to place this matter on the court's suspense docket, removing George's motion

(which cannot be addressed) from the court's list of open motions. George's counsel is directed to report to the court every 90 days on the progress of the bankruptcy case.

## STATEMENT OF FACTS

### A. The Parties

Kathryn is a resident and domiciliary of Connecticut. Dkt. No. 53.

George is a resident and domiciliary of Florida. Dkt. No. 1-1, ¶ 8.

Feinberg is a resident and domiciliary of New York. *Id.* p. 2.

Both CM and FB are limited liability partnerships, so they are citizens of each and every state in which any person who was a partner in said firm on the day this lawsuit was filed is a resident. *Milberg LLP v. HWB Alexandra Strategies Portfolio*, 2020 WL 3833829, at *2 (S.D.N.Y. July 8, 2020), *aff'd sub nom. Milberg, LLP v. Drawrah Ltd.*, 844 F.Appx. 397 (2d Cir. 2021). For diversity purposes, the fact that both CM and FB were organized under New York law and have their principal places of business in New York is irrelevant.

CM and FB have filed statements listing the names and states of citizenship of each of their respective partners on the day this lawsuit was filed. Dkt. No. 51, 52. Both firms have multiple partners who reside in New York, so both firms are, *inter alia*, citizens of the State of New York for diversity purposes. *Id.* However, both firms have a partner who is a citizen of Connecticut, so both are also citizens of Connecticut. *Id.* Therefore, the two law firms are not diverse from Kathryn.

### B. The Child Victims Act Litigation in the New York State Supreme Court

According to the Complaint, George sexually abused Kathryn when they were both children. *See* Dkt. No. 1-1, ¶ 1. In August 2019, pursuant to New York State's Child Victims Act

("CVA"), CPLR 214-g, Kathryn brought a damages action (the "CVA Action") against George in New York State Supreme Court. *See id.* ¶ 5. Feinberg, who was at the time a partner at FB, represented George in that litigation. *See id.* ¶ 11; *see also* Dkt. No. 25-1, ¶ 8. Feinberg moved from FB to CM in 2022, while the CVA Action was still pending. *See* Dkt. No. 1-1, ¶ 13; *see also* Dkt. No. 25-1, ¶ 8.

On July 6, 2023, Kathryn and George settled Kathryn's CVA Action. *See* Dkt. No. 1-1. The settlement was reduced to a written settlement agreement. Dkt. No. 25-2, Summons & Compl. Ex. 2. (the "CVA Settlement Agreement"). Feinberg allegedly negotiated the CVA Settlement Agreement on behalf of George. *See* Dkt. No. 1-1.

The CVA Settlement Agreement provided, *inter alia*, that George would pay Kathryn a total of $3.75 million in three installments. *See id.* ¶¶ 35–37, 71. The first installment was due on September 30, 2023. *See id.* ¶ 36. The CVA Settlement Agreement permitted Kathryn to enter judgment against George for the full $3.75 million; the parties entered into a stipulation, which was so ordered by the court, directing the Clerk of Court to enter that judgment. *See id.* ¶ 35; *see also* Dkt. No. 25-2, Ex. B. ("CVA Judgment"). However, as part of the CVA Settlement Agreement, Kathryn agreed not to enforce said judgment as long as George was making the payments for which the CVA Judgment provided. Dkt. No. 25-2, Summons & Compl. Ex. 2, ¶ 1.H.

The CVA Settlement Agreement specified multiple consequences to George if he breached it. Generally, the CVA Settlement Agreement provided that Kathryn could bring a breach of contract action in the event that "George Robb Jr. breache[d] the Agreement." *Id.* ¶ 1.M. If George breached by failing to make the payments as specified, an acceleration clause rendered the full amount of the $3.75 million immediately due and payable, and Kathryn was

released from her promise not to enforce the CVA Judgment. *Id.* ¶ 1.I. In the event Kathryn learned that George breached his obligation to disclose all his assets, she had the right, at her option, to take possession of those undisclosed assets, and to obtain injunctive relief in connection therewith. *Id.* ¶ 1.K. Finally, Kathryn could also elect to return to court for a damages trial, though presumably that would require her to seek vacatur of the existing $3.75 million judgment. *Id.* ¶¶ 1.C, 1.E, 1.I. I note that some of these provisions appear to be inconsistent, which suggests that Kathryn could, at her option, elect to pursue some remedies but not others.

For all such actions, Kathryn and George — the only parties to the CVA Settlement Agreement — consented to the exclusive jurisdiction of the federal and state courts of New York, except for actions for "money for enforcement of the Judgment," which could be brought wherever an enforcement action was pending – presumably wherever George had assets that could be attached. *Id.* ¶ 11.

### C. The Present Litigation

The CVA Settlement Agreement required George to make the first payment by September 30, 2023. Dkt. No 1-1, ¶ 36. George did not make the first payment. *Id.* ¶ 175. Kathryn alleges that, on or about September 22, 2023 – a week before the payment was due — Feinberg informed Kathryn's lawyer that George "intended to breach the settlement agreement." *Id.* ¶ 48.

On May 9, 2024, Kathryn filed the instant action against George in New York state court. *See* New York State Supreme Court, New York County, Index Number 154321/2024, NYSCEF Doc. No. 1. In it, she alleges that both George and Feinberg fraudulently induced her to enter the CVA Settlement Agreement by making various misrepresentations about the nature, ownership, and control of George's assets. *See* Dkt. No. 1-1, ¶¶ 44–53. Kathryn further alleges that George's

financial statement (upon which both George and Feinberg knew she would rely in accepting a settlement) failed to disclose a multi-million-dollar investment. *See id.* ¶¶ 55–70. Kathryn also asserts that George never intended to comply with the CVA Settlement Agreement – a fact allegedly known to his attorney, Feinberg, although Kathryn does not allege when or how Feinberg became aware of this fact. *See id.* ¶¶ 73–74.

Those allegations of fact form the basis of her various claims against George, Feinberg, and the two law firms with which Feinberg was at various times affiliated. George's failure to make the September 30, 2023 payment and his failure to disclose all his assets form the gravamen of a separate claim for breach of contract that Kathryn brings against George alone. *See id.* ¶¶ 162–181.

On June 4, 2024, George filed a Notice of Removal to this Court. Dkt. No. 1. On June 10, 12, and 21, 2024, Feinberg, FB, and CM, respectively, filed consents to removal, notwithstanding the fact that all three of them were citizens of New York, the state in which the lawsuit was pending. Dkt. No. 5, 9, 18.

Kathryn moved to remand the case to the New York State Supreme Court on June 12, 2024. Dkt. No. 7. All defendants oppose remand on the ground that all defendants other than George were fraudulently joined in this collateral attack on the judgment against George alone. Dkt. No. 27, 29-4, 31. All defendants ask that the Complaint be dismissed. *Id.*

## ARGUMENT

### KATHRYN'S MOTION FOR REMAND IS DENIED BECAUSE THE LAWYER DEFENDANTS WERE FRAUDULENTLY JOINED IN THIS ACTION

The law governing remand in these circumstances is straightforward. "When the removal of an action to federal court is contested, the burden falls squarely upon the removing party to

establish its right to a federal forum by competent proof." *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F.Supp.2d 177, 179 (S.D.N.Y. 2003) (internal quotation marks omitted); *see also MBIA Ins. Corp., v. Royal Bank of Canada*, 706 F.Supp.2d 380, 386 (S.D.N.Y. 2009). It is equally clear that a "plaintiff may not defeat federal court diversity jurisdiction by improperly joining as a defendant a non-diverse party with no real connection to the controversy," which is a tactic known as "fraudulent joinder." *Bounds v. Pines Belt Mental Health Care Resources*, 593 F.3d 209, 215 (2d Cir. 2010); *see also Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998).

"Joinder will be considered fraudulent when it is established that there can be no recovery against the defendant under the law of the state on the cause alleged." *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001) (internal quotations and brackets omitted); *see also Belen v. Herman*, 2024 WL 182588, at *6 (S.D.N.Y. January 17, 2024). Thus, "even though federal law applies to the question of fraudulent joinder, the ultimate question is whether state law might impose liability on the facts involved." *MBIA Ins. Corp.*, 706 F.Supp.2d at 394 (cleaned up). "If state case law or legislation removes all reasonable possibility that the plaintiff would be permitted to litigate the claim, then remand *must* be denied." *City of New York v. Exxon Mobil Corp.*, 2024 WL 2091994, at *7 (S.D.N.Y. May 8, 2024) (emphasis added). This means that a federal court facing a claim of fraudulent joinder must decide what is, in effect, a motion to dismiss the claims asserted against the defendants who alleged that they were fraudulently joined – even though remand would otherwise be perfectly proper.

New York law "removes all reasonable possibility" that Kathryn "would be permitted to litigate" her claims against the New York Defendants in this action. *Exxon Mobil Corp.*, 2024 WL 2091994, at *7.

11

Under New York law, it "is elementary that a final judgment . . . represents a valid and conclusive adjudication of the parties' substantive rights, unless and until it is overturned on appeal." *Kasowitz, Benson, Torres & Friedman, LLP v. JPMorgan Chase Bank*, 209 A.D.3d 529, 530 (1st Dep't 2022) (internal quotation marks omitted). Consequently, "a party who has lost an action as a result of alleged fraud or false testimony cannot collaterally attack the judgment in a separate action against the party who adduced the false evidence, and the plaintiff's remedy lies *exclusively* in moving to vacate the judgment." *DeMartino v. Lomonaco*, 155 A.D.3d 686, 687 (2d Dep't 2017) (emphasis added).

"A 'collateral attack' is an attack on an order that is made in a proceeding (other than a direct appeal) that is different from the proceeding in which the order was entered and that seeks to *undo or nullify* the order itself." *KeyBank N.A. v. Franklin Advisors, Inc.*, 616 B.R. 14, 30 (Bankr. S.D.N.Y. 2020) (emphasis added). New York law designates a case as a collateral attack "if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral." *Wilcox v. Supreme Council of Royal Arcanum*, 136 N.Y.S. 377, 379 (3d Dep't 1912).

The rule against collateral attacks on judgments applies equally to judgments that have been procured by fraudulent evidence and judgments procured by fraudulent settlement. *See Urias v. Daniel Buttafuoco & Assocs., PLLC*, 173 A.D.3d 1244, 1246 (2d Dep't 2019), *aff'd but criticized*, 41 N.Y.3d 560 (2024) (remedy for recovering attorneys' fees fraudulently procured by settlement "lies exclusively in that lawsuit itself, i.e., by moving pursuant to CPLR 5015 to vacate a civil judgment due to its fraudulent procurement, not a secondary plenary action collaterally attacking the judgment in the original action." (internal quotation marks omitted));

*Parker & Waichman v. Napoli*, 29 A.D.3d 396, 399 (1st Dep't 2006) (where "real issue" in claim couched as breach of contract was "whether there was fraud behind the global settlement," claim "constitute[d] an improper collateral attack on a prior order.").

Kathryn alleges that she was fraudulently induced to settle the CVA Action on the eve of the damages trial -- a settlement she later reduced to a judgment. Her coy insistence notwithstanding, there can be no doubt that this constitutes an attack on the validity of the judgment she obtained. The only remedy for a judgment obtained by fraud is to set the judgment aside — not damages and not enforcement of the judgment, *Marshall v. Grant*, 521 F. Supp. 2d 240, 246 (E.D.N.Y. 2007) — and CPLR 5015 supplies the only procedural vehicle for vacating a judgment that was procured by fraud in a New York State court. *See* N.Y. Civ. Pr. L. & R. § 5015(a)(3).

CPLR 5015 was enacted "to minimize the necessity for use of independent procedures of collateral attack upon a judgment." *Oppenheimer v. Westcott*, 47 N.Y.2d 595, 603 (1979). A plaintiff may only bring a motion to vacate in the court in which the original judgment was entered; no other court has jurisdiction to entertain such a motion. *Campbell v. Bank of America, N.A.*, 155 A.D.3d 820, 822 (2d Dep't 2022); *see also Kasowitz, Benson, Torres & Friedman, LLP*, 209 A.D.3d at 530.

CPLR 5015 dooms Kathryn's efforts to bring a separate, collateral action against anyone, including the Lawyer Defendants, in any court, state or federal, on the ground that the judgment she obtained was fraudulently procured — whether by affirmative misrepresentation, omission, or concealment — and so should be set aside. Her only remedy is to move to vacate the CVA Judgment on the ground that the CVA Judgment was procured by fraud, pursuant to CPLR 5015. Kathryn must make that motion in the original action (the CVA Action) and court (Supreme

13

Court, New York County) in which the settlement was reached and the judgment was entered thereon.

For that reason, Kathryn's First, Second, Third, and Fourth Causes of Action must be dismissed. *See id.* ¶¶ 89-91, 101-104, 113-115, 123-125, 134-136, 144-146, 154-156, 163-165, 175, 183, 190-192. The aim of each and every allegation in those claims is to "undo or nullify" the CVA Settlement Agreement, which was reduced to the CVA Judgment. *KeyBank N.A.*, 616 B.R. at 30. The "real issue" in this case is whether Defendants fraudulently induced Kathryn to enter into the CVA Settlement Agreement. Courts routinely dismiss such collateral attacks on settlements, whether they are couched as other torts or breaches of contract. *See, e.g., Urias*, 173 A.D.3d at 1246 (dismissing claims for attorney misconduct, conversion, and fraud as all collateral attacks on settlement); *DeMartino*, 155 A.D.3d at 687–88 (dismissing claims for fraud, aiding and abetting fraud, attorney misconduct, and prima facie tort as all collateral attacks on judicial disposal order involving personal property).

The same result pertains when considering Kathryn's Fifth Cause of Action against the Lawyer Defendants for Aiding and Abetting a Fraud. That claim, too, depends for its force on a finding that the CVA Judgment was the product of fraud.

To the extent that Kathryn's claim for Tortious Interference (Sixth Cause of Action) depends for its force on her contention that Feinberg and the two law firms were aware of the settlement, but knew that George "had no intention of complying" with it, Dkt. No. 1-1, ¶¶ 74, 143–144, that cause of action, too, rests on her contention that the CVA Judgment lacks integrity and should be set aside. If that is the gravamen of her claim, then the claim must be dismissed on collateral attack grounds. *Cf. DeMartino*, 155 A.D.3d at 687–88 (dismissing tort claims as collateral attack on prior judgment).

Kathryn also alleges that the Lawyer Defendants tortiously interfered with her contract with George by collecting their fees and thereby rendering George unable to pay her. Contrary to the Lawyer Defendants' argument, that claim is not a collateral attack on the CVA Judgment; indeed, it depends for its force on the judgment's being valid and binding, and the CVA Settlement Agreement breachable. The same is true of her claim that, by accepting fees for their legal work—money that Kathryn says should have come to her -- the two law firms were unjustly enriched (Seventh Cause of Action).

But that does not save these causes of action from dismissal for failure to state a claim. For Kathryn does not plead a single fact showing that either of these claims is plausible, as required by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

As against FB, of which Feinberg ceased to be a member in November 2022 — seven months before the CVA Settlement Agreement was signed (on July 6, 2023) and was subsequently breached (on September 30, 2023) – there is not a single non-conclusory factual allegation in the pleading tending to show, or even suggest, that FB had anything to do with the settlement of the lawsuit, or with any action that occurred following the execution of the settlement and the entry of the judgment. She pleads no fact that would allow a trier of fact to infer that FB knew anything about the settlement, let alone about its former client's purported intention not to honor it. Nor does she plead any fact admitting of an inference that FB did not earn whatever fee it was paid (if it was paid anything at all). For that reason, neither the Sixth nor the Seventh Causes of Action states a claim against FB, and Kathryn could not possibly recover against that firm thereon.

As for Feinberg and CM: the Complaint contains only purely conclusory allegations, with no facts pleaded tending to show that either defendant did anything to render it impossible for George to make the first payment due under the CVA Settlement Agreement. Indeed, the pleading alleges that George concealed from Kathryn the existence of highly valuable assets; accepting that pleaded fact to be true, it seems quite clear that George had the means, if not the will, to make the payments due under the CVA Settlement Agreement. Nor does Kathryn allege a single fact tending to show that Feinberg knew, during the settlement negotiations, that George intended not to comply with it. She alleges only that Feinberg was aware of this on September 22, 2023, long after the settlement was agreed. Finally, to the extent that Kathryn alleges that Feinberg and CM were paid for their services, she fails to allege any fact tending to show that Feinberg did not earn his fee. On the contrary, she alleges that Feinberg negotiated the settlement, which means he earned his compensation. As a matter of law, George could not unjustly enrich one of two creditors by choosing to pay the first creditor an amount owed, even if the second creditor remained unpaid. *See Irving Trust Co. v. Chase Nat. Bank*, 65 F.2d 409 (2d Cir. 1933). For all these reasons, the Sixth and Seventh Causes of Action against Feinberg and CM are utterly implausible and must be dismissed for failure to state a claim.

There is yet another reason why joinder on these claims is fraudulent – which is to say, why there is no possibility that Kathryn can state a claim against the non-diverse defendants. The CVA Settlement Agreement and CVA Judgment contain a general release by Kathryn of all claims against George and his attorneys and agents. Doc. No. 25-2, Summons & Compl. Ex. 2, ¶ 2.A. To the extent that Kathryn is asserting claims that depend for their force on the validity of the CVA Settlement Agreement (i.e., the Sixth and Seventh Causes of Action), the release bars those claims as against the Lawyer Defendants. And to the extent that she alleges that the

judgment was fraudulently obtained: unless and until she gets the judgment vacated – which she can only do by making a CPLR 5015 motion in New York County Supreme Court – the agreement is presumed valid and the release of claims against Feinberg and the law firms is enforceable.

Finally, Kathryn's claims for Negligent and Intentional Infliction of Emotional Distress (Tenth and Eleventh Causes of Action) are dismissible on their face as against the Lawyer Defendants. In New York, one can only negligently inflict emotional distress on a plaintiff if he owes a duty to that person. *Abdulaziz v. McKinsey & Co.*, 2022 WL 2444925, at *2 (2d Cir. 2022) (citing *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (2001)). But, "[w]hen attorneys engage in face to face negotiations with an adversarial party, New York courts have held that they do not have a duty of care to the third party *even if that party with the attorney's knowledge relies on the attorney's representation.*" *Crews v. County of Nassau*, 612 F. Supp.2d 199, 205, 206 (E.D.N.Y. 2009) (emphasis added and internal quotation marks omitted). Therefore, Kathryn fails to plead a viable claim of negligent infliction of emotional distress against George's lawyers, who owed a duty only to their client, George.

As for intentional infliction of emotional distress, it is a highly disfavored cause of action under New York law, *see Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014), and the facts pleaded by Kathryn do not come close to making out a plausible claim for relief on that ground. In New York, the cause of action has four elements: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress." *See Chanko v. American Broadcasting Companies, Inc.*, 27 N.Y.3d 46, 56 (2016). The first step is especially steep; as New York's highest court has repeatedly stressed, "[l]iability has

been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotation marks omitted); *see also Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 122 (1993). Alleging that lawyers represented their client in a situation where their client was adverse to Kathryn does not come close to constituting extreme or outrageous conduct. Indeed, the only outrage would have been if the lawyers had not represented George's interests zealously.

It is clear from the foregoing that Kathryn has no viable claim against the Lawyer Defendants. Nor could she possibly amend the Complaint to assert one. Therefore, Feinberg and the law firms were fraudulently joined as defendants in this action, and the complaint is dismissed as against them in its entirety. For removal purposes, their New York citizenship is irrelevant. The only parties' whose citizenship matters are Kathryn and George – and they are unquestionably diverse.

Kathryn's motion to remand is, therefore, DENIED, as is her request for attorneys' fees in connection therewith.

## CONCLUSION

For the reasons stated above, Plaintiff Kathryn Robb's Motion to Remand is DENIED.

The motion by Defendants Glen Feinberg, Fullerton Beck, LLP, and Coffey Modica, LLP to dismiss the claims asserted against them is GRANTED.

The Clerk of Court is respectfully directed to close open motions at Dkt. No. 7, 29 and 30 and to remove them from the list of open motions on the court's docket.

The Clerk is further directed to stay all further proceedings in this matter, to remove the motion at Docket #25 (George Robb's Motion to Dismiss) from the court's list of open motions and to place it on the suspense docket pending resolution of George Robb's bankruptcy case. The

motion at Docket #25 should not appear on the list of open motions, because the court is without power to decide it.

This constitutes the decision and order of the court. It is a written decision.

Dated: October 23, 2024

_____
U.S.D.J

BY ECF TO ALL COUNSEL