

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KATHRYN ROBB,

     Plaintiffs,

  -against-

GEORGE ROBB JR., GLEN FEINBERG, COFFEY
MODICA, LLP f/k/a COFFEY MODICA O'MEARA
CAPOWSKY, LLP, and FULLERTON BECK, LLP,

     Defendants.

---

Case No.: 1:24-cv-4262-CM

---

### DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT GEORGE ROBB JR.'S MOTION TO DISMISS

McMahon, J.:

     Kathryn Robb ("Plaintiff") is a citizen of Connecticut. Dkt. No. 53. She commenced this lawsuit in the New York State Supreme Court in and for New York County against her brother George Robb. Jr., a citizen of Florida; Glen Feinberg, a New York attorney who represented George in a previous lawsuit brought by Kathryn; and two law firms with which Feinberg was associated during the course of that prior lawsuit. *See* Dkt. No. 1-1.

     The instant complaint alleges that, in the previous action -- which Kathryn commenced in the New York State Supreme Court in and for New York County under the Child Victims Act ("CVA"), CPLR § 214-g -- George and Feinberg fraudulently induced Kathryn (who has long insisted that her brother abused her when they were minors) to enter into a settlement on the eve of a damages trial. *See* Dkt. No. 1-1. Under the terms of the settlement, which the parties reduced to a written agreement (the "CVA Settlement Agreement"), George agreed to pay Kathryn the sum of $3.75 million, in three tranches, with the first payment due by September 30, 2023. Dkt. No.

25-2, Summons & Compl. Ex. 2, ¶ 1. As was her right, Kathryn had the CVA Settlement Agreement reduced to a judgment (the "CVA Judgment"), which was docketed in New York County on July 10, 2023. New York State Supreme Court, New York County, Index No. 950000/2019, NYSCEF Doc. No. 272. Per one provision of the CVA Settlement Agreement, Kathryn agreed to forbear from enforcing her judgment as long as George remained in compliance with the CVA Settlement Agreement's payment schedule. *See* Dkt. No. 25-2, Summons & Compl. Ex. 2, ¶ 1.H.

Needless to say, George did not make the first payment required by the CVA Settlement Agreement and the CVA Judgment, either on the due date (September 30, 2023) or thereafter. Dkt. No. 1-1, ¶¶ 36, 175. So, Kathryn sued George in the New York State Supreme Court. She alleged that George had breached the CVA Settlement Agreement in two ways: (1) by not making the first payment, and (2) by concealing certain assets he was required to disclose prior to the damages trial. *Id.* ¶¶ 36, 113, 175.

But Kathryn also brought multiple causes of action – fraud, fraud by omission, fraudulent concealment, fraudulent inducement, negligent infliction of emotional distress, intentional infliction of emotional distress, and unjust enrichment – against George. All of those claims are predicated on the notion that George fraudulently induced her to settle the CVA case rather than go to trial. *See id.* On these claims, Kathryn also sued Feinberg, George's lawyer, who had participated in the negotiations that led to the settlement. *Id.* For good measure, she sued two law firms: (1) Coffey Modica, LLP ("CM"), of which Feinberg was a member at the time the settlement was negotiated and signed, and (2) Fullerton Beck, LLP ("FB") to which Feinberg belonged when the case commenced in 2019 – and with which he ceased to be associated in 2022, many months

before the settlement of the CVA Action. *Id.* I will refer to these defendants collectively as the "Lawyer Defendants."

George removed the case to this Court pursuant to 28 U.S.C. §1441(a), alleging complete diversity, Dkt. No. 1. And there is indeed complete diversity as between him and his sister. Dkt. No. 1-1, 53.

However, Feinberg is a citizen of New York, and each of the two law firms Kathryn sued had one equity partner who was a citizen of New York. Dkt. No. 1-1, 51, 52. This presumptively rendered removal of the case improper under the rule that, if any "properly joined and served" defendant is a citizen of the forum state, a case in which federal jurisdiction is predicated solely on diversity cannot be removed to a federal court. *See* 28 U.S.C. § 1441(b)(2) (emphasis added):

> A civil action otherwise removable solely on the basis of [diversity] jurisdiction under section 1332(a) of this title, may not be removed if *any* of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

In mid-2024, this court was confronted with three separate sets of motions.

Kathryn moved to remand the case to the New York State Supreme Court.

The Lawyer Defendants moved to dismiss the complaint for failure to state a claim against them.

George both opposed Kathryn's motion for remand on the ground of fraudulent joinder (no viable claim existing against the non-diverse Lawyer Defendants) and moved to dismiss the complaint as against him.

The court was literally on the verge of disposing of all the motions – including specifically by issuing a ruling on George's motion to dismiss Kathryn's claims against him – when George filed a petition in bankruptcy in the Southern District of Florida, where he resides. Dkt. No. 53. So the court excised the rulings applicable to George's motion from its decision; granted the Lawyer

Defendants' motion to dismiss the complaint against them as an impermissible collateral attack on a judgment of the New York State Supreme Court; and denied Kathryn's motion to remand (since without the fraudulently joined Lawyer Defendants in the case there was complete diversity between brother and sister). Dkt. No. 55. I revealed in that decision that I had been on the verge of granting George's motion in part and denying it in part, but by virtue of the bankruptcy filing was prevented from doing so. Dkt No. 55, at 5-6.

On April 3, 2025, the Bankruptcy Court for the Southern District of Florida lifted the automatic stay for the limited purpose of allowing this court to issue its decision on George's motion to dismiss. Dkt. No. 60. This is that decision.

Because I have no intention of re-doing the work already done in connection with the disposition of all the pending motions, I refer the parties and the learned Bankruptcy Judge to my decision on the Lawyer Defendants' motion to dismiss, which contains a more detailed discussion of the background of this case and sets out the reasoning behind my decision to dismiss Counts One, Two, Three and Four asserted by Kathryn against her brother. For ease of reference, I am attaching a copy of that decision – again, found at Dkt. No. 55 on the docket in this court – to this opinion, and I incorporate it by reference.

**GEORGE'S MOTION TO DISMISS IS GRANTED IN PART AND DENIED IN PART**

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "court looks to the four corners of the complaint, presumes all well-pleaded facts to be true, and draws all reasonable inferences in favor of the pleader." *Securitas Electronic Security, Inc. v. DeBon*, 2021 WL 965382, at *1 (S.D.N.Y. March 15, 2021). Dismissal is required where a complaint fails to "contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* (cleaned up). Although the factual allegations in a complaint need not be "detailed," they must be

"more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Id.* (internal quotation marks omitted).

As was explained at length in this court's decision and order dismissing Kathryn's claims against the Lawyer Defendants, Dkt. No. 55, attached, nearly all of Kathryn's claims constitute an impermissible collateral attack on the CVA Judgment. Those claims are barred under New York law and so must be dismissed. *Saporito v. Branda*, 213 A.D.3d 588, 589 (1st Dep't 2023); *see also Robert v. Cooper*, 114 A.D.3d 456, 458 (1st Dep't 2014). This ruling applies to all of Kathryn's claims that rely for their force on George's alleged fraud in obtaining the CVA Settlement Agreement that was eventually reduced to the CVA Judgment: the First Cause of Action (Fraud), Second Cause of Action (Fraud by Omission), Third Cause of Action (Fraudulent Concealment) and Fourth Cause of Action (Fraudulent Inducement). All of these claims are predicated on the purported invalidity of the CVA Settlement Agreement because Kathryn was fraudulently induced to enter it. Kathryn cannot have it both ways – she cannot at one and the same time argue that she was fraudulently induced to settle her case and yet insist that she is not mounting a collateral attack on the judgment that embodies the settlement – a judgment she herself obtained. These four causes of action against George are, therefore, dismissed.

However, these claims are dismissed without prejudice to Kathryn's exercising her right to bring a motion in New York County Supreme Court in the CVA Action, pursuant to CPLR 5015. In that context, Kathryn is perfectly free to argue that the judgment should be set aside because it was fraudulently induced, whether by misstatement, concealment or omission. But it is not for this court to rule on those allegations; only the court in which the judgment was entered can do so. And George cannot remove such a motion to a federal court.

The Tenth and Eleventh Causes of Action, for negligent and intentional infliction of emotional distress, must also be dismissed as against George.

As discussed in the context of deciding the Lawyer Defendants' motion, to state a claim for negligent infliction of emotional distress under New York law, a plaintiff must allege "that a breach of *a duty of care* result[ed] directly in emotional harm." *Brown v. New York Design Ctr., Inc.*, 215 A.D.3d 1, 5 (1st Dep't 2023) (emphasis added); *see also Taggart v. Costabile*, 131 A.D.3d 243, 255 (2d Dep't 2015). The Complaint does not allege that George owed Kathryn any such duty, which is fatal to the claim for negligent infliction of emotional distress as presently pleaded. Amendment would not cure the problem, because, as her adversary in litigation, George owed Katheryn no duty of care. *Accord Crews v. County of Nassau*, 612 F. Supp.2d 199, 205 (E.D.N.Y. 2009) ("New York courts make abundantly clear that an attorney does not owe a duty of care to an adversary."); *Aglira v. Julien & Schlesinger, P.C.*, 214 A.D.2d 178, 183 (1st Dep't 1995) ("attorney does not owe a duty of care to his adversary."). Because George had no fiduciary relationship with Kathryn when they negotiated the CVA Settlement Agreement, that rule bars her duty-based claims as against him.

The best Kathryn can muster·is the wholly conclusory assertion that George "had the power, ability, authority, and *duty*" to prevent her purported emotional harm. Dkt No. 1-1, ¶ 184 (emphasis added). Because a "pleading that offers labels or conclusions or a formulaic recitation of elements of a cause of action" is fatally insufficient, her negligent infliction of emotional distress claim must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Kathryn identifies no duty that George owed her in connection with the settlement of a lawsuit in which the two siblings were adversaries.

Kathryn's claim for intentional infliction of emotional distress is similarly defective. *See* Dkt. No. 1-1, ¶¶ 189–195. As was the case with the Lawyer Defendants, Kathryn's claim fails to satisfy the "outrageousness element," which "courts have tended to focus on" because it is "the most susceptible to a determination as a matter of law." *Howell v. New York Post Co., Inc.*, 91 N.Y.2d 115, 121 (1993). In substance, the Complaint alleges that George breached the CVA Settlement Agreement by failing to pay the first installment and misrepresenting his assets. Measured against the weight of relevant caselaw, that alleged conduct – which, if true, constitutes a breach of contract – is "not sufficiently outrageous" to justify relief. *Id.* at 122.

As a general rule, a breach of contract is not "outrageous" conduct in the tortious sense. Numerous New York cases hold that a breach of contract is not actionable as intentional infliction of emotional distress. *See Bauman v. Hanover Community Bank*, 100 A.D.3d 814, 817 (2d Dep't 2012); *Offenbach v. Ohlbaum*, 217 A.D.3d 456, 458 (1st Dep't 2023) (fraudulent representation regarding payment of film project's subscription agreement not sufficiently outrageous); *Giambrone v. Arnone, Lowth, Wilson, Leibowitz, Adriano & Greco*, 197 A.D.3d 459, 463 (2d Dep't 2021) (breach of commission agreement not sufficiently outrageous); *Vanderburgh v. Porter Sheet Metal, Inc.*, 86 A.D.2d 688 (3d Dep't 1982) ("[d]amages for emotional disturbance… are generally not compensable in a breach of contract action.").

But the Ninth Cause of Action is a different matter altogether. It alleges that George breached the CVA Settlement Agreement. It specifically alleges that George "intended to and did enter into" the CVA Settlement Agreement – i.e., it pleads that there is a valid and binding contract between Kathryn and George – and then contends that George breached that agreement in two ways – by failing to disclose all of his assets, and by failing to make the first payment thereunder, which was due on September 30, 2023 but was not paid. Dkt. No. 1-1, ¶¶ 172–181.

7

A breach of contract claim against George is not a collateral attack on the judgment and the underlying agreement. Indeed, Kathryn's breach of contract claim is the antithesis of a collateral attack on the judgment. By alleging breach of contract, she necessarily admits that the underlying contract (i.e., the Settlement Agreement and the CVA Judgment entered thereon) was valid and binding. Therefore, the Ninth Cause of Action cannot be dismissed on the ground that it constitutes an impermissible collateral attack on the CVA Settlement Agreement and the CVA Judgment.

George argues, however, that the breach of contract claim is barred by the terms of the CVA Settlement Agreement, which provides that, if George defaults on his payment obligations, Kathryn can either (1) seek to enforce the CVA Judgment *or* (2) reopen the case for a prompt trial on damages. *See* Dkt. No. 25-2, Summons & Compl. Ex. 2, ¶¶ 1.C, 1.E. George claims that the Ninth Cause of Action must be dismissed because an independent suit for breach of contract is not one of the remedies provided in the parties' agreement.

George is wrong about that.

In New York, parties to a civil dispute are free to chart their own course. Unless public policy is affronted, they may fashion their own exclusive remedies for the breach of any agreement they make. *Hunt v. Detroit Sulphite Pulp & Paper Co.*, 15 F. Supp. 698, 701 (W.D.N.Y. 1936). "Courts must honor contractual provisions that limit liability or damages because those provisions represent the parties' agreement on the allocation of the risk of economic loss in certain eventualities." *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 30 N.Y.3d 572, 581 (2017); *see also Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 31 N.Y.3d 569, 581 (2018). And a party may not "subvert an *exclusive* remedies provision by simply recharacterizing its claims." *Id.* at 582. (emphasis added).

8

But these rules do not answer the question posed by George's Motion to Dismiss the Ninth Cause of Action. That is because the two remedies identified by George are not the exclusive remedies provided to Kathryn under the CVA Settlement and Judgment. There is a third.

"Under New York law, contractual remedies are deemed to be nonexclusive absent some indication of contrary intent." *Kahala Corp. v. Holtzman*, 2010 WL 4942228, at *2 (S.D.N.Y. December 3, 2010) (internal footnote and quotation marks omitted). Thus, unless it is perfectly clear from the text of the CVA Settlement Agreement that Kathryn was agreeing not to avail herself of the standard remedy for breach of contract – a breach of contract lawsuit – she should be allowed to bring such a claim.

The plain language of the CVA Settlement Agreement makes it perfectly clear that Kathryn's right to enforce the judgment in the event of breach does not bar her from bringing a separate action for breach of contract. *See* Dkt. No. 25-2, Summons & Compl. Ex. 2. As a matter of fact, the CVA Settlement Agreement specifically provides that she may do so. *Id.* ¶ 1.M.

The CVA Agreement contains, not just two, but three separate provisions relating to Kathryn's remedies for breach of contract by George.

If George breached the agreement by failing to make one or more of the payments to which he agreed in the CVA Settlement Agreement, and the default continued for more than five days following email notice of the default to his attorney, Kathryn had the right to immediately enforce the judgment for its full amount – $3.75 million. *Id.* ¶ 1.I. Notably, Kathryn had agreed to forbear her right to enforce the entire judgment as long as George followed the installment payment schedule. But as soon as George failed to make a payment, the full amount of the settlement became due and Kathryn's forbearance obligation lapsed. *Id.* ¶ 1.H.

However, Kathryn did not elect to bring an action to enforce the judgment.

Similarly, if George breached the agreement by failing to disclose assets, Kathryn had the right to take title to those assets, and to apply to the New York State Supreme Court – "this Court" (i.e., the court in which the CVA Action was pending) – to obtain injunctive relief to facilitate the same. *Id.* ¶ 1.K.

Kathryn did not elect this remedy either.

Instead, she brought an action for breach of contract – both for breach of the provision to make the first payment (which was the only payment he had failed to make at the time her complaint was filed), as well as for George's alleged failure to disclose all his assets (a contractual obligation). It appears that she did so in reliance on the following provision in the CVA Agreement:

> If George Robb, Jr., breaches the Agreement, Kathryn Robb shall bring an action to enforce her rights hereunder, and Kathryn Robb shall be entitled to recover from George Robb, Jr., her costs and expenses, including cost, interest and attorney's fees, if any, incurred…

Section 1.M. When one party breaches a contract, the other party has the right to bring an action for breach. That is one of Kathryn's rights as a contracting party. It is perfectly obvious that the parties contemplated that Kathryn could bring an action for breach of contract if George breached the contract – in any manner, and even if the CVA provided Kathryn with some other remedy to redress such a breach. Section 1.M of the CVA says so, quite explicitly. Bringing the Ninth Cause of Action is one of her several options in the event George breached their contract. It happens to be the one she elected to pursue.

Kathryn has adequately alleged that George breached the contract, in both of the above respects. In light of the plain language of Section 1.M of the CVA, George's argument that Kathryn is barred from suing on those breaches in a standard breach of contract action is a non-starter. George is of course correct that Kathryn "must stand on the covenant as made, and cannot ask the court to add provisions… which she failed to have inserted before the [contract] was signed,"

10

*McCready v. Lindenborn*, 172 N.Y. 400, 408 (1902). And there are other routes Kathryn could have chosen to pursue. But Kathryn is not asking this court to add an unwritten provision to the settlement agreement between her and her brother. Rather, she asks this court to allow her to avail herself of one of the several remedies for which that agreement expressly provides.

Therefore, George's motion to dismiss Kathryn's Ninth Cause of Action is DENIED.

However, since her breach of contract claim survives, Kathryn's claim for unjust enrichment against George must be dismissed. She alleges that George is being unjustly enriched by receiving income from investments that he allegedly failed to disclose under the terms of the CVA Settlement Agreement. *See* Dkt. No. 1-1, ¶ 163. But what she alleges is that George is being enriched by his breach. "[A] valid contract governing a particular matter precludes recovery in quasi-contract for events arising out of the same subject matter." *Intern'l CableTel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483, 491 (S.D.N.Y. 1997) (Sotomayor, J.).

## CONCLUSION

George Robb's motion to dismiss his sister's complaint against him is GRANTED except insofar as it addresses the Ninth Cause of Action, for breach of contract; to that extent only, the motion is DENIED.

I again note that the dismissal of Counts One, Two, Three and Four is without prejudice to Kathryn's right to seek vacatur of the CVA Judgment on whatever grounds she believes is open to her – but she can only do that in the court in which that judgment was entered.

Which is not this court.

The Clerk is directed to remove the motion at Dkt. No. 25 from the court's list of open motions.

I believe that this decision disposes of the one and only matter that was remitted to my attention by my colleague, the learned Bankruptcy Judge of the Southern District of Florida; I do not understand the Bankruptcy Court to have lifted the automatic stay for any purpose other than to decide the motion to dismiss. It thus appears that the automatic stay is once again in force; and so I direct the Clerk of this Court to reimpose the stay in bankruptcy and stay all further proceedings in this action (closing it administratively) pending further action by the Bankruptcy Court.

Dated: June 12, 2025

_____
United States District Judge

BY ECF TO ALL COUNSEL

BY EMAIL TO THE HON. ROBERT A. MARK, UNITED STATES BANKRUPTCY JUDGE (for docketing in Adversary Proceeding 24-1058-RAM in *In Re George E. Robb, Jr. Debtor*, Chapter 11 Case No. 24-30951, United States Bankruptcy Court, Southern District of Florida)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



KATHRYN ROBB,

        Plaintiffs,

    -against-

GEORGE ROBB JR., GLEN FEINBERG, COFFEY
MODICA, LLP f/k/a COFFEY MODICA O'MEARA
CAPOWSKY, LLP, and FULLERTON BECK, LLP,

        Defendants.

Case No.: 1:24-cv-4262-CM

### DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR REMAND; GRANTING DEFENDANTS GLEN FEINBERG, COFFEY MODICA, LLP, AND FULLERTON BECK, LLP'S MOTION TO DISMISS; STAYING PROCEEDINGS AS AGAINST DEFENDANT GEORGE ROBB JR.; AND PLACING THE MOTION AT DOCKET #25 ON THE SUSPENSE CALENDAR PENDING BANKRUPTCY

McMahon, J.:

    Kathryn Robb ("Plaintiff") is a citizen of Connecticut. Dkt. No. 53. She commenced this

lawsuit in the New York State Supreme Court in and for New York County against her brother

George Robb, Jr., a citizen of Florida; Glen Feinberg, a New York attorney who represented

George in a previous lawsuit brought by Kathryn; and two law firms with which Feinberg was

associated during the course of that prior lawsuit. *See* Dkt. No. 1-1.

    This lawsuit alleges that, in the action brought by Kathryn in the New York State

Supreme Court in and for New York County under the Child Victims Act ("CVA"), CPLR §

214-g, George and Feinberg fraudulently induced Kathryn — who has long insisted that her

brother abused her when they were minors — to enter into a settlement on the eve of a damages

trial. *See* Dkt. No. 1-1. Under the terms of the settlement, which the parties reduced to a written

1

agreement (the "CVA Settlement Agreement"), George agreed to pay Kathryn the sum of $3.75 million, in three tranches, with the first payment due by September 30, 2023. Dkt. No. 25-2, Summons & Compl. Ex. 2, ¶ 1. As was her right, Kathryn had the CVA Settlement Agreement reduced to a judgment (the "CVA Judgment"), which was docketed in New York County on July 10, 2023. New York State Supreme Court, New York County, Index No. 950000/2019, NYSCEF Doc. No. 272. Per one provision of the CVA Settlement Agreement, Kathryn agreed to forbear from enforcing her judgment as long as George remained in compliance with the CVA Settlement Agreement's payment schedule. *See* Dkt. No. 25-2, Summons & Compl. Ex. 2, ¶ 1.H.

Needless to say, George did not make the September 30, 2023 payment required by the CVA Settlement Agreement and the CVA Judgment. Dkt. No. 1-1, ¶¶ 36, 175. Kathryn — freed from her obligation to forbear enforcement — sued George in the New York State Supreme Court, alleging that George breached the CVA Settlement Agreement in two ways: (1) by not making the first payment and (2) by concealing certain assets he was required to disclose prior to to the damages trial. *Id.* ¶¶ 36, 113, 175.

Kathryn also brought multiple causes of action -- fraud, fraud by omission, fraudulent concealment, fraudulent inducement, negligent infliction of emotional distress, intentional infliction of emotional distress, and unjust enrichment – against George, all of which are predicated on the notion that George fraudulently induced her to settle the CVA case rather than go to trial — a settlement with which George had no intention of complying. *See id.* On these claims, Kathryn also sued Glen Feinberg, George's lawyer, who participated in the negotiations that led to the settlement. *Id.* For good measure, she sued two law firms: (1) Coffey Modica, LLP ("CM"), of which Feinberg was a member at the time the settlement was negotiated and signed, and (2) Fullerton Beck, LLP ("FB") to which Feinberg belonged when the case commenced in

2

2019 — and with which he ceased to be associated in 2022, many months before the settlement of the CVA Action. *Id.* I will refer to these defendants collectively as the "Lawyer Defendants."

George removed the case to this Court pursuant to 28 U.S.C. §1441(a), alleging complete diversity, Dkt. No. 1. And there is indeed complete diversity as between him and his sister, Dkt. No. 1-1, 53. However, Feinberg is a citizen of New York, and each of the two law firms has one equity partner who is a citizen of New York. Dkt. No. 1-1, 51, 52. This presumptively rendered removal of the case improper under the rule that defendants who reside in the forum state cannot remove a case filed against them to federal court. *See* 28 U.S.C. § 1441(b)(2) (emphasis added):

> A civil action otherwise removable solely on the basis of [diversity] jurisdiction under section 1332(a) of this title, may not be removed if *any* of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

Moreover, while the summons filed in the New York State Supreme Court indicated that Kathryn is a resident of Lexington, Massachusetts, Dkt. No. 1-1, p.1, a subsequently-filed declaration by Kathryn's attorney clarified that Kathryn is actually a resident of Connecticut. Dkt. No. 53. Therefore, removal is also improper because there is not complete diversity as between her and the two law firms, each of which has a partner who is a citizen of Connecticut. Dkt No. 51, 52. *See Carden v. Arkoma Assoc.*, 494 U.S. 185, 195–96 (1990) (the state of citizenship of a limited liability corporation or partnership for diversity purposes is the citizenship of each members of said entity – not, as the parties appear to have believed, the state of incorporation or of the entity's principal place of business).

Despite these impediments, the Lawyer Defendants all filed consents to removal, Dkt. No. 5, 9, 19. However, they do not actually "consent" to suit in federal court. Instead, the Lawyer Defendants argue that they were "fraudulently joined" as defendants in an action in which her claims only lie against George, and so are not "properly joined as defendants" in this case,

3

rendering the rules that bar removal inapplicable. *See* Dkt. No. 27, pp. 2–4; Dkt. No. 29-4, pp. 6–7; Dkt. No. 31, p. 8. The Lawyer Defendants argue that Kathryn "fraudulently joined" the Lawyer Defendants for the sole purpose of defeating removal. *See* Dkt. No. 27, 29-4, 31. The fraudulent joinder rule ensures that a plaintiff cannot deprive a diverse defendant of the right to a federal forum by suing non-diverse parties who destroy the ability of a diverse defendant to remove the case, but who have no real stake in the litigation. *Bounds v. Pines Belt Mental Health Care Resources*, 593 F.3d 209, 215 (2d Cir. 2010). The Lawyer Defendants allege that they have no real stake in the lawsuit because Kathryn's Complaint, fairly read, fails to state a claim against any of them. They ask the court to dismiss the claims asserted against them, which would allow George's removal of the case to stand. George, of course, prefers to litigate in federal court, so he opposes remand and supports the Lawyer Defendants' efforts to determine whether Kathryn fraudulently joined them as adverse parties. *See* Dkt. No. 26.

It is well settled that a federal court confronted with the possibility of fraudulent joinder on a motion to remand can look behind the allegations of a complaint and ascertain whether the complaint states a viable claim against the defendants who assert that joinder was fraudulent. *See Pampillonia v. RJR Nabisco*, 138 F.3d 459, 461 (2d Cir. 1998). In order to defeat a motion to remand on the basis of fraudulent joinder, a defendant must show that there is "no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court."

Kathryn asserts no viable causes of action against any of the Lawyer Defendants. Most of her claims against them consist of an impermissible attack of the validity of the New York State Supreme Court's judgment against her brother George in the underlying CVA Action. She mounts these attacks under a variety of guises, but whether she alleges this or that type of fraud,

or unjust enrichment, her claims all in essence allege that George and the Lawyer Defendants fraudulently convinced Kathryn to agree to a settlement that George never intended to honor. The law is clear that there is one, and only one, way for Kathryn to assert that claim, however she chooses to style it: she needs to bring a motion in the court in which the judgment was entered – in this case, the New York State Supreme Court – pursuant to NY CPLR 5015, to set the judgment aside. Only the court that entered the judgment can vacate it, since New York law prohibits collateral attacks on prior judgments. *Urias v. Daniel P. Buttafuoco & Assocs., PLLC*, 41 N.Y.3d 560, 567 (2024) (citing *Crouse v. McVickar*, 207 N.Y. 213, 219 (1912)).

The remaining few causes of action asserted against the Lawyer Defendants -- for tortious interference with contract and intentional infliction of emotional distress -- also fail to state a claim for relief and can be dismissed on a motion under Fed. R. Civ. P. 12(b)(6).

Since the allegations of Kathryn's Complaint fail to state a viable claim against the Lawyer Defendants, the Lawyer Defendants were indeed fraudulently joined, and the claims against them are DISMISSED. As a result, their citizenship can be disregarded when deciding Kathryn's Motion to Remand.

The only real parties of interest in this case are Kathryn and George, between whom there is complete diversity. The Motion to Remand is, therefore, DENIED, as is Kathryn's request for attorneys' fees – a request made even less meritorious by the utter lack of merit to her claims against the fraudulently joined Lawyer Defendants.

George also moved to dismiss the complaint as against him (Dkt # 25). On October 22, the court completed a decision GRANTING that motion in part and DENYING it in part – specifically, denying George's motion to dismiss the Ninth Cause of Action (for breach of contract) that Kathryn asserted against him. The Ninth Cause of Action, unlike many of

Kathryn's other claims, did not constitute an attack on the underlying state court judgment –

indeed, it depended for its force on the validity of the Settlement Agreement that was

incorporated into the judgment, since one cannot breach an invalid contract. Kathryn clearly

alleged that George had breached the Settlement Agreement, both by not making the September

2023 payment and by concealing assets from her in violation of the terms of the Agreement.

Moreover, because the Settlement Agreement specifically provided that, "If George Robb Jr.

breaches the Agreement, Kathryn Robb shall bring an action to enforce her rights hereunder, and

Kathryn Robb shall be entitled to recover from George Robb, Jr., her costs and expenses,

including cost, interest and attorney's fees...." *Id.* ¶ 1.M, her right to sue in breach of contract – a

right that every party to a contract has in the event of breach -- is not barred by the terms of the

agreement that also allow her to pursue other remedies (enforcement of the CVA Judgment,

which she had foreborne to do; attachment of assets) for which that agreement also provides.

However, while that decision was awaiting docketing, the court's eyes fell on a letter in

my in box, notifying me that George had filed a voluntary petition in bankruptcy in the United

States Bankruptcy Court for the Southern District of Florida. (Dkt. # 54). Therefore, before my

decision could be docketed, all proceedings against George were stayed pursuant to 11 U.S.C.

§ 362. In light of the automatic stay, I recalled the original decision and excised those portions

that dispose of George's motion on the merits. However, there is no reason not to issue so much

of the decision as disposes of Kathryn's claims against the Lawyer Defendants, none of whom is

in bankruptcy and all of whom deserve to be let out of chancery.

Because of the automatic stay, the Clerk of Court is directed to stay all further

proceedings and to place this matter on the court's suspense docket, removing George's motion

(which cannot be addressed) from the court's list of open motions.  George's counsel is directed to report to the court every 90 days on the progress of the bankruptcy case.

## STATEMENT OF FACTS

### A.  The Parties

Kathryn is a resident and domiciliary of Connecticut. Dkt. No. 53.

George is a resident and domiciliary of Florida. Dkt. No. 1-1, ¶ 8.

Feinberg is a resident and domiciliary of New York. *Id.* p. 2.

Both CM and FB are limited liability partnerships, so they are citizens of each and every state in which any person who was a partner in said firm on the day this lawsuit was filed is a resident. *Milberg LLP v. HWB Alexandra Strategies Portfolio*, 2020 WL 3833829, at *2 (S.D.N.Y. July 8, 2020), *aff'd sub nom. Milberg, LLP v. Drawrah Ltd.*, 844 F.Appx. 397 (2d Cir. 2021). For diversity purposes, the fact that both CM and FB were organized under New York law and have their principal places of business in New York is irrelevant.

CM and FB have filed statements listing the names and states of citizenship of each of their respective partners on the day this lawsuit was filed. Dkt. No. 51, 52. Both firms have multiple partners who reside in New York, so both firms are, *inter alia*, citizens of the State of New York for diversity purposes. *Id.* However, both firms have a partner who is a citizen of Connecticut, so both are also citizens of Connecticut. *Id.* Therefore, the two law firms are not diverse from Kathryn.

### B.  The Child Victims Act Litigation in the New York State Supreme Court

According to the Complaint, George sexually abused Kathryn when they were both children. *See* Dkt. No. 1-1, ¶ 1. In August 2019, pursuant to New York State's Child Victims Act

("CVA"), CPLR 214-g, Kathryn brought a damages action (the "CVA Action") against George in New York State Supreme Court. *See id.* ¶ 5. Feinberg, who was at the time a partner at FB, represented George in that litigation. *See id.* ¶ 11; *see also* Dkt. No. 25-1, ¶ 8. Feinberg moved from FB to CM in 2022, while the CVA Action was still pending. *See* Dkt. No. 1-1, ¶ 13; *see also* Dkt. No. 25-1, ¶ 8.

On July 6, 2023, Kathryn and George settled Kathryn's CVA Action. *See* Dkt. No. 1-1. The settlement was reduced to a written settlement agreement. Dkt. No. 25-2, Summons & Compl. Ex. 2. (the "CVA Settlement Agreement"). Feinberg allegedly negotiated the CVA Settlement Agreement on behalf of George. *See* Dkt. No. 1-1.

The CVA Settlement Agreement provided, *inter alia*, that George would pay Kathryn a total of $3.75 million in three installments. *See id.* ¶¶ 35–37, 71. The first installment was due on September 30, 2023. *See id.* ¶ 36. The CVA Settlement Agreement permitted Kathryn to enter judgment against George for the full $3.75 million; the parties entered into a stipulation, which was so ordered by the court, directing the Clerk of Court to enter that judgment. *See id.* ¶ 35; *see also* Dkt. No. 25-2, Ex. B. ("CVA Judgment"). However, as part of the CVA Settlement Agreement, Kathryn agreed not to enforce said judgment as long as George was making the payments for which the CVA Judgment provided. Dkt. No. 25-2, Summons & Compl. Ex. 2, ¶ 1.H.

The CVA Settlement Agreement specified multiple consequences to George if he breached it. Generally, the CVA Settlement Agreement provided that Kathryn could bring a breach of contract action in the event that "George Robb Jr. breache[d] the Agreement." *Id.* ¶ 1.M. If George breached by failing to make the payments as specified, an acceleration clause rendered the full amount of the $3.75 million immediately due and payable, and Kathryn was

8

released from her promise not to enforce the CVA Judgment. *Id.* ¶ 1.I. In the event Kathryn learned that George breached his obligation to disclose all his assets, she had the right, at her option, to take possession of those undisclosed assets, and to obtain injunctive relief in connection therewith. *Id.* ¶ 1.K. Finally, Kathryn could also elect to return to court for a damages trial, though presumably that would require her to seek vacatur of the existing $3.75 million judgment. *Id.* ¶¶ 1.C, 1.E, 1.I. I note that some of these provisions appear to be inconsistent, which suggests that Kathryn could, at her option, elect to pursue some remedies but not others.

For all such actions, Kathryn and George — the only parties to the CVA Settlement Agreement — consented to the exclusive jurisdiction of the federal and state courts of New York, except for actions for "money for enforcement of the Judgment," which could be brought wherever an enforcement action was pending – presumably wherever George had assets that could be attached. *Id.* ¶ 11.

### C. The Present Litigation

The CVA Settlement Agreement required George to make the first payment by September 30, 2023. Dkt. No 1-1, ¶ 36. George did not make the first payment. *Id.* ¶ 175. Kathryn alleges that, on or about September 22, 2023 – a week before the payment was due — Feinberg informed Kathryn's lawyer that George "intended to breach the settlement agreement." *Id.* ¶ 48.

On May 9, 2024, Kathryn filed the instant action against George in New York state court. *See* New York State Supreme Court, New York County, Index Number 154321/2024, NYSCEF Doc. No. 1. In it, she alleges that both George and Feinberg fraudulently induced her to enter the CVA Settlement Agreement by making various misrepresentations about the nature, ownership, and control of George's assets. *See* Dkt. No. 1-1, ¶¶ 44–53. Kathryn further alleges that George's

financial statement (upon which both George and Feinberg knew she would rely in accepting a settlement) failed to disclose a multi-million-dollar investment. *See id.* ¶¶ 55–70. Kathryn also asserts that George never intended to comply with the CVA Settlement Agreement – a fact allegedly known to his attorney, Feinberg, although Kathryn does not allege when or how Feinberg became aware of this fact. *See id.* ¶¶ 73–74.

Those allegations of fact form the basis of her various claims against George, Feinberg, and the two law firms with which Feinberg was at various times affiliated. George's failure to make the September 30, 2023 payment and his failure to disclose all his assets form the gravamen of a separate claim for breach of contract that Kathryn brings against George alone. *See id.* ¶¶ 162–181.

On June 4, 2024, George filed a Notice of Removal to this Court. Dkt. No. 1. On June 10, 12, and 21, 2024, Feinberg, FB, and CM, respectively, filed consents to removal, notwithstanding the fact that all three of them were citizens of New York, the state in which the lawsuit was pending. Dkt. No. 5, 9, 18.

Kathryn moved to remand the case to the New York State Supreme Court on June 12, 2024. Dkt. No. 7. All defendants oppose remand on the ground that all defendants other than George were fraudulently joined in this collateral attack on the judgment against George alone. Dkt. No. 27, 29-4, 31. All defendants ask that the Complaint be dismissed. *Id.*

## ARGUMENT

### KATHRYN'S MOTION FOR REMAND IS DENIED BECAUSE THE LAWYER DEFENDANTS WERE FRAUDULENTLY JOINED IN THIS ACTION

The law governing remand in these circumstances is straightforward. "When the removal of an action to federal court is contested, the burden falls squarely upon the removing party to

10

establish its right to a federal forum by competent proof." *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F.Supp.2d 177, 179 (S.D.N.Y. 2003) (internal quotation marks omitted); *see also MBIA Ins. Corp., v. Royal Bank of Canada*, 706 F.Supp.2d 380, 386 (S.D.N.Y. 2009). It is equally clear that a "plaintiff may not defeat federal court diversity jurisdiction by improperly joining as a defendant a non-diverse party with no real connection to the controversy," which is a tactic known as "fraudulent joinder." *Bounds v. Pines Belt Mental Health Care Resources*, 593 F.3d 209, 215 (2d Cir. 2010); *see also Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998).

"Joinder will be considered fraudulent when it is established that there can be no recovery against the defendant under the law of the state on the cause alleged." *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001) (internal quotations and brackets omitted); *see also Belen v. Herman*, 2024 WL 182588, at *6 (S.D.N.Y. January 17, 2024). Thus, "even though federal law applies to the question of fraudulent joinder, the ultimate question is whether state law might impose liability on the facts involved." *MBIA Ins. Corp.*, 706 F.Supp.2d at 394 (cleaned up). "If state case law or legislation removes all reasonable possibility that the plaintiff would be permitted to litigate the claim, then remand *must* be denied." *City of New York v. Exxon Mobil Corp.*, 2024 WL 2091994, at *7 (S.D.N.Y. May 8, 2024) (emphasis added). This means that a federal court facing a claim of fraudulent joinder must decide what is, in effect, a motion to dismiss the claims asserted against the defendants who alleged that they were fraudulently joined – even though remand would otherwise be perfectly proper.

New York law "removes all reasonable possibility" that Kathryn "would be permitted to litigate" her claims against the New York Defendants in this action. *Exxon Mobil Corp.*, 2024 WL 2091994, at *7.

Under New York law, it "is elementary that a final judgment . . . represents a valid and conclusive adjudication of the parties' substantive rights, unless and until it is overturned on appeal." *Kasowitz, Benson, Torres & Friedman, LLP v. JPMorgan Chase Bank*, 209 A.D.3d 529, 530 (1st Dep't 2022) (internal quotation marks omitted). Consequently, "a party who has lost an action as a result of alleged fraud or false testimony cannot collaterally attack the judgment in a separate action against the party who adduced the false evidence, and the plaintiff's remedy lies *exclusively* in moving to vacate the judgment." *DeMartino v. Lomonaco*, 155 A.D.3d 686, 687 (2d Dep't 2017) (emphasis added).

"A 'collateral attack' is an attack on an order that is made in a proceeding (other than a direct appeal) that is different from the proceeding in which the order was entered and that seeks to *undo or nullify* the order itself." *KeyBank N.A. v. Franklin Advisors, Inc.*, 616 B.R. 14, 30 (Bankr. S.D.N.Y. 2020) (emphasis added). New York law designates a case as a collateral attack "if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral." *Wilcox v. Supreme Council of Royal Arcanum*, 136 N.Y.S. 377, 379 (3d Dep't 1912).

The rule against collateral attacks on judgments applies equally to judgments that have been procured by fraudulent evidence and judgments procured by fraudulent settlement. *See Urias v. Daniel Buttafuoco & Assocs., PLLC*, 173 A.D.3d 1244, 1246 (2d Dep't 2019), *aff'd but criticized*, 41 N.Y.3d 560 (2024) (remedy for recovering attorneys' fees fraudulently procured by settlement "lies exclusively in that lawsuit itself, i.e., by moving pursuant to CPLR 5015 to vacate a civil judgment due to its fraudulent procurement, not a secondary plenary action collaterally attacking the judgment in the original action." (internal quotation marks omitted));

12

*Parker & Waichman v. Napoli*, 29 A.D.3d 396, 399 (1st Dep't 2006) (where "real issue" in claim couched as breach of contract was "whether there was fraud behind the global settlement," claim "constitute[d] an improper collateral attack on a prior order.").

Kathryn alleges that she was fraudulently induced to settle the CVA Action on the eve of the damages trial -- a settlement she later reduced to a judgment. Her coy insistence notwithstanding, there can be no doubt that this constitutes an attack on the validity of the judgment she obtained. The only remedy for a judgment obtained by fraud is to set the judgment aside — not damages and not enforcement of the judgment, *Marshall v. Grant*, 521 F. Supp. 2d 240, 246 (E.D.N.Y. 2007) — and CPLR 5015 supplies the only procedural vehicle for vacating a judgment that was procured by fraud in a New York State court. *See* N.Y. Civ. Pr. L. & R. § 5015(a)(3).

CPLR 5015 was enacted "to minimize the necessity for use of independent procedures of collateral attack upon a judgment." *Oppenheimer v. Westcott*, 47 N.Y.2d 595, 603 (1979). A plaintiff may only bring a motion to vacate in the court in which the original judgment was entered; no other court has jurisdiction to entertain such a motion. *Campbell v. Bank of America, N.A.*, 155 A.D.3d 820, 822 (2d Dep't 2022); *see also Kasowitz, Benson, Torres & Friedman, LLP*, 209 A.D.3d at 530.

CPLR 5015 dooms Kathryn's efforts to bring a separate, collateral action against anyone, including the Lawyer Defendants, in any court, state or federal, on the ground that the judgment she obtained was fraudulently procured — whether by affirmative misrepresentation, omission, or concealment — and so should be set aside. Her only remedy is to move to vacate the CVA Judgment on the ground that the CVA Judgment was procured by fraud, pursuant to CPLR 5015. Kathryn must make that motion in the original action (the CVA Action) and court (Supreme

13

Court, New York County) in which the settlement was reached and the judgment was entered thereon.

For that reason, Kathryn's First, Second, Third, and Fourth Causes of Action must be dismissed. *See id.* ¶¶ 89-91, 101-104, 113-115, 123-125, 134-136, 144-146, 154-156, 163-165, 175, 183, 190-192. The aim of each and every allegation in those claims is to "undo or nullify" the CVA Settlement Agreement, which was reduced to the CVA Judgment. *KeyBank N.A.*, 616 B.R. at 30. The "real issue" in this case is whether Defendants fraudulently induced Kathryn to enter into the CVA Settlement Agreement. Courts routinely dismiss such collateral attacks on settlements, whether they are couched as other torts or breaches of contract. *See, e.g., Urias*, 173 A.D.3d at 1246 (dismissing claims for attorney misconduct, conversion, and fraud as all collateral attacks on settlement); *DeMartino*, 155 A.D.3d at 687–88 (dismissing claims for fraud, aiding and abetting fraud, attorney misconduct, and prima facie tort as all collateral attacks on judicial disposal order involving personal property).

The same result pertains when considering Kathryn's Fifth Cause of Action against the Lawyer Defendants for Aiding and Abetting a Fraud. That claim, too, depends for its force on a finding that the CVA Judgment was the product of fraud.

To the extent that Kathryn's claim for Tortious Interference (Sixth Cause of Action) depends for its force on her contention that Feinberg and the two law firms were aware of the settlement, but knew that George "had no intention of complying" with it, Dkt. No. 1-1, ¶¶ 74, 143–144, that cause of action, too, rests on her contention that the CVA Judgment lacks integrity and should be set aside. If that is the gravamen of her claim, then the claim must be dismissed on collateral attack grounds. *Cf. DeMartino*, 155 A.D.3d at 687–88 (dismissing tort claims as collateral attack on prior judgment).

14

Kathryn also alleges that the Lawyer Defendants tortiously interfered with her contract with George by collecting their fees and thereby rendering George unable to pay her. Contrary to the Lawyer Defendants' argument, that claim is not a collateral attack on the CVA Judgment; indeed, it depends for its force on the judgment's being valid and binding, and the CVA Settlement Agreement breachable. The same is true of her claim that, by accepting fees for their legal work—money that Kathryn says should have come to her -- the two law firms were unjustly enriched (Seventh Cause of Action).

But that does not save these causes of action from dismissal for failure to state a claim. For Kathryn does not plead a single fact showing that either of these claims is plausible, as required by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

As against FB, of which Feinberg ceased to be a member in November 2022 — seven months before the CVA Settlement Agreement was signed (on July 6, 2023) and was subsequently breached (on September 30, 2023) – there is not a single non-conclusory factual allegation in the pleading tending to show, or even suggest, that FB had anything to do with the settlement of the lawsuit, or with any action that occurred following the execution of the settlement and the entry of the judgment. She pleads no fact that would allow a trier of fact to infer that FB knew anything about the settlement, let alone about its former client's purported intention not to honor it. Nor does she plead any fact admitting of an inference that FB did not earn whatever fee it was paid (if it was paid anything at all). For that reason, neither the Sixth nor the Seventh Causes of Action states a claim against FB, and Kathryn could not possibly recover against that firm thereon.

15

As for Feinberg and CM: the Complaint contains only purely conclusory allegations, with no facts pleaded tending to show that either defendant did anything to render it impossible for George to make the first payment due under the CVA Settlement Agreement. Indeed, the pleading alleges that George concealed from Kathryn the existence of highly valuable assets; accepting that pleaded fact to be true, it seems quite clear that George had the means, if not the will, to make the payments due under the CVA Settlement Agreement. Nor does Kathryn allege a single fact tending to show that Feinberg knew, during the settlement negotiations, that George intended not to comply with it. She alleges only that Feinberg was aware of this on September 22, 2023, long after the settlement was agreed. Finally, to the extent that Kathryn alleges that Feinberg and CM were paid for their services, she fails to allege any fact tending to show that Feinberg did not earn his fee. On the contrary, she alleges that Feinberg negotiated the settlement, which means he earned his compensation. As a matter of law, George could not unjustly enrich one of two creditors by choosing to pay the first creditor an amount owed, even if the second creditor remained unpaid. *See Irving Trust Co. v. Chase Nat. Bank*, 65 F.2d 409 (2d Cir. 1933). For all these reasons, the Sixth and Seventh Causes of Action against Feinberg and CM are utterly implausible and must be dismissed for failure to state a claim.

There is yet another reason why joinder on these claims is fraudulent – which is to say, why there is no possibility that Kathryn can state a claim against the non-diverse defendants. The CVA Settlement Agreement and CVA Judgment contain a general release by Kathryn of all claims against George and his attorneys and agents. Doc. No. 25-2, Summons & Compl. Ex. 2, ¶ 2.A. To the extent that Kathryn is asserting claims that depend for their force on the validity of the CVA Settlement Agreement (i.e., the Sixth and Seventh Causes of Action), the release bars those claims as against the Lawyer Defendants. And to the extent that she alleges that the

judgment was fraudulently obtained: unless and until she gets the judgment vacated – which she can only do by making a CPLR 5015 motion in New York County Supreme Court – the agreement is presumed valid and the release of claims against Feinberg and the law firms is enforceable.

Finally, Kathryn's claims for Negligent and Intentional Infliction of Emotional Distress (Tenth and Eleventh Causes of Action) are dismissible on their face as against the Lawyer Defendants. In New York, one can only negligently inflict emotional distress on a plaintiff if he owes a duty to that person. *Abdulaziz v. McKinsey & Co.*, 2022 WL 2444925, at *2 (2d Cir. 2022) (citing *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (2001)). But, "[w]hen attorneys engage in face to face negotiations with an adversarial party, New York courts have held that they do not have a duty of care to the third party *even if that party with the attorney's knowledge relies on the attorney's representation*." *Crews v. County of Nassau*, 612 F. Supp.2d 199, 205, 206 (E.D.N.Y. 2009) (emphasis added and internal quotation marks omitted). Therefore, Kathryn fails to plead a viable claim of negligent infliction of emotional distress against George's lawyers, who owed a duty only to their client, George.

As for intentional infliction of emotional distress, it is a highly disfavored cause of action under New York law, *see Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014), and the facts pleaded by Kathryn do not come close to making out a plausible claim for relief on that ground. In New York, the cause of action has four elements: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress." *See Chanko v. American Broadcasting Companies, Inc.*, 27 N.Y.3d 46, 56 (2016). The first step is especially steep; as New York's highest court has repeatedly stressed, "[l]iability has

17

been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotation marks omitted); *see also Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 122 (1993). Alleging that lawyers represented their client in a situation where their client was adverse to Kathryn does not come close to constituting extreme or outrageous conduct. Indeed, the only outrage would have been if the lawyers had not represented George's interests zealously.

It is clear from the foregoing that Kathryn has no viable claim against the Lawyer Defendants. Nor could she possibly amend the Complaint to assert one. Therefore, Feinberg and the law firms were fraudulently joined as defendants in this action, and the complaint is dismissed as against them in its entirety. For removal purposes, their New York citizenship is irrelevant. The only parties' whose citizenship matters are Kathryn and George -- and they are unquestionably diverse.

Kathryn's motion to remand is, therefore, DENIED, as is her request for attorneys' fees in connection therewith.

## CONCLUSION

For the reasons stated above, Plaintiff Kathryn Robb's Motion to Remand is DENIED.

The motion by Defendants Glen Feinberg, Fullerton Beck, LLP, and Coffey Modica, LLP to dismiss the claims asserted against them is GRANTED.

The Clerk of Court is respectfully directed to close open motions at Dkt. No. 7, 29 and 30 and to remove them from the list of open motions on the court's docket.

The Clerk is further directed to stay all further proceedings in this matter, to remove the motion at Docket #25 (George Robb's Motion to Dismiss) from the court's list of open motions and to place it on the suspense docket pending resolution of George Robb's bankruptcy case. The

motion at Docket #25 should not appear on the list of open motions, because the court is without power to decide it.

This constitutes the decision and order of the court. It is a written decision.

Dated: October 23, 2024

_____
U.S.D.J

BY ECF TO ALL COUNSEL

19